



_____
Honorable Thad J. Collins
United States Bankruptcy Judge



**Entered on Docket**
**December 28, 2012**

_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF NEVADA

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 11 |
| | : | |
| MUNICIPAL CORRECTIONS, LLC, | : | BANKRUPTCY |
| | : | NO.   12-12253-mkn |
| Debtor. | : | |

_____

## RULING ON CREDITOR IRWIN COUNTY'S MOTION FOR TRANSFER OF VENUE AND ORDER TRANSFERRING CASE

This matter came before the Court on creditor Irwin County's Motion for Transfer of Venue. The Court held a hearing on the matter on September 21, 2012. Attorneys Lenard Schwartzer and Austin Carter appeared for the Debtor, Municipal Corrections, LLC. Attorneys Patrick McLaughlin and Jon Pearson appeared on behalf of UMB Bank, N.A., as Indenture Trustee, representing the interests of the bondholders. Attorney Shlomo Sherman appeared for Irwin County, Georgia. Attorney Richard Holley appeared for creditor Detention Management, LLC. After hearing the parties' arguments, the Court took the matter under advisement. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

1

## I.    PROCEDURAL HISTORY AND FACTUAL BACKGROUND

On February 29, 2012, three creditors of Municipal Corrections, LLC

("Municipal Corrections") filed an involuntary bankruptcy petition in this Court.

The three petitioning creditors were: UMB Bank, N.A., as Indenture Trustee (the

"Indenture Trustee,") representing the interests of the bondholders under the

Indenture Agreement, and two of the bondholders, Oppenheimer Rochester

National Municipals and Hamlin Capital Management, LLC (collectively, the

"Petitioning Creditors").  They filed in Nevada because Municipal Corrections was

incorporated in Nevada.  The Court entered an Order for Relief on August 15,

2012.

Municipal Corrections is a company which was set up in 2007 to facilitate the

financing and construction of a new prison facility in Irwin County, Georgia.

Municipal Corrections sold bonds to bondholders and constructed the prison at the

cost of approximately $55,000,000.00.  Municipal Corrections then leased the

prison to Irwin County (the "County").  Municipal Corrections is simply a

landlord.  The County runs the prison through a company called Detention

Management, LLC and pays rent to Municipal Corrections based on the total

occupancy.

In 2010 and 2011, the lease payments to Municipal Corrections were insufficient

to cover total expenses.  While the lease payments were sufficient to cover

2

operating expenses, they were not enough to cover the payments to bondholders or to pay the property taxes to the County.  Due to the unpaid property taxes, the County obtained a tax lien.  The value of the County's claim is listed on Debtor's Schedule D as a secured claim for $1,604,625.44 and is marked disputed.  The City of Ocilla, Georgia claims to be entitled to a portion of the County's claim.

In January 2012, the County started tax forfeiture proceedings.  On January 17, 2012, the Superior Court of Irwin County ordered a tax forfeiture sale to be held on March 6, 2012.  The County, the Debtor, and the Indenture Trustee attempted to negotiate a settlement of the County's tax claim.  The settlement talks were unfruitful.  On February 29, 2012, one week before the scheduled tax sale, the Petitioning Creditors filed the involuntary bankruptcy petition to prevent the sale of the prison.  The Indenture Trustee has informed the Court that in this bankruptcy he will seek to have the County's tax lien equitably subordinated to the interest of the bondholders.  The Indenture Trustee argues the County's attempt to force a tax forfeiture sale is inequitable and unfair.  The Trustee argues the County is essentially attempting to obtain possession of a facility the Debtor financed with the bondholder's $55 million for the $1.6 million in back taxes.

On March 26, 2012, the Debtor filed the Motion to Transfer Venue to the Middle District of Georgia, the district in which the prison is located.  Debtor requested an expedited hearing on the Motion to Transfer.  Debtor also filed a Motion to Delay

Consideration of Order for Relief Until After Ruling on the Motion to Transfer Venue Or, In the Alternative, To Extend Time to Answer Involuntary Petition. The Court denied the request for expedited hearing on the Motion to Transfer and set both pending motions for hearing. On April 5, 2012, Irwin County, Georgia, the tax lien creditor, joined Debtor's Motion to Transfer.

The Court heard the matter for the first time on April 17, 2012. The parties requested and received permission to continue the hearing until June 12, 2012, to allow creditors to formally object to the Motion to Transfer and to allow the parties some time to discuss other preliminary matters. The parties later jointly agreed to deadlines giving the Petitioning Creditors more time to file their opposition to the Motion to Transfer and a time for Debtor to respond. Debtor also objected to the proposed Order for Relief.

On May 25, 2012, the Indenture Trustee filed its formal Objection to Debtor's Motion to Transfer venue. The Indenture Trustee's Objection was joined by the other Petitioning Creditors.

On June 7, 2012, Debtor and Petitioning Creditors requested a continuance of the June 12, 2012 hearing to discuss reaching agreement on venue, use of cash collateral, adequate protection, and turnover. Irwin County did not agree to the continuance. Irwin County also filed a Reply to the Petitioning Creditor's Objection to Transfer. The Court heard the Motion to Continue on June 12, 2012.

Irwin County specifically noted at the hearing that the Petitioning Creditors should not be able to use their requests for delays and more general activity in the case as a reason to retain the case in Nevada.  The Court granted the continuance over Irwin County's objection.  The Court scheduled the hearing on the venue matter for July 30, 2012.

In the run up to the July 30, 2012 hearing, a flurry of activity occurred.  On July 17, 2012, Debtor, the Indenture Trustee, and Petitioning Creditors entered into Stipulations Regarding Discovery and a Proposed Protective Order, which the Court approved.  On July 27, 2012, Petitioning Creditors filed an additional resistance to the Motion to Transfer.  Also on July 27, 2012, Debtor filed an Emergency Motion For Entry of an Order Approving Stipulation Authorizing Debtor to Use Cash Collateral and Give Adequate Protection.  Debtor also requested the Court to treat the order on cash collateral as interim relief and to set a final hearing on cash collateral.

At the hearings on July 30, 2012, Debtor and Petitioning Creditors offered their stipulation on the use of cash collateral.  Debtor informed the Court that a condition of the cash collateral agreement required Debtor to withdraw its Motion to Transfer Venue.  After discussing how this affected the County's joinder in the motion, the parties agreed that it was not necessary for the County to file its own,

new Motion to Transfer.  The Court would simply treat the County as replacing the Debtor on the Motion to Transfer.

   The Court held a hearing on the merits of the Motion to Transfer on September 21, 2012.  The County—now the moving party—argued the case belonged in the Middle District of Georgia—or at a minimum—in the Northern District of Georgia.  The County pointed out the sole asset in the case—the prison—was located in the Middle District of Georgia.  It argued that it was a poor rural county and its ability to participate was complicated by the Nevada venue.  It argued County officials would have to expend large sums on travel to Nevada for court. The County  pointed out that Debtor's owner, Terry O'Brien, lived in Atlanta and ran the business from Atlanta.  The County also pointed out that no party—not the Indenture Trustee or even a single individual bondholder—was from Nevada.  The County also pointed out the <u>only</u> connection to Nevada was that Debtor was incorporated here.  Debtor has no employees, offices, or anything tangible in Nevada.

   Detention Management, LLC, another creditor, also appeared at the hearing.  It indicated it had just made an appearance and retained counsel.  Detention Management indicated it would be filing a joinder in the County's Motion to Transfer and asked for—and was granted—permission to argue.  It argued in favor of transfer to either Georgia location.  Detention Management noted that it not only

ran the prison in Irwin County but was a Georgia company based in Atlanta. Detention Management noted it would be an unsecured creditor in the bankruptcy. Detention Management also informed the Court that Terry O'Brien, the owner of the Debtor, was a principal of Detention Management.

Debtor took no position on venue at the hearing. Debtor noted it withdrew its Motion to Transfer in accordance with the agreement it entered with the Petitioning Creditors on cash collateral. Debtor did not argue or indicate that it favored venue in Nevada.

The Indenture Trustee argued on behalf of all bondholders against the Motion to Transfer. He argued the bondholders held the largest claims—in number and size—and that they chose Nevada as the venue they preferred. He argued that choice is entitled to great weight given that venue in Nevada was facially appropriate given Debtor's incorporation here. He argued the good air service from around the country to Las Vegas made it a convenient venue for all parties. He argued the Middle District of Georgia was very inconvenient—pointing out that the likely site for hearings was more than two hundred miles from Atlanta—and there was no close air service. At the close of the hearing, the Court took the matter under advisement.

On September 28, 2012, the County filed a Supplemental Brief regarding its Motion to Transfer Venue. On September 28, 2012, Detention Management

formally filed a joinder in the County's Motion to Transfer venue and reiterated the arguments it made at the hearing. On September 28, 2012, the Indenture Trustee also filed a Supplemental Brief to its Opposition to Transfer.

## II.   WHETHER VENUE IN NEVADA IS PROPER UNDER 28 U.S.C. § 1408

Before deciding the transfer of venue motion, the Court must first ask whether the original venue was proper. See In re B.L. of Miami, Inc., 294 B.R. 325, 328 (Bankr. D. Nev. 2003) (citing In re Newport Creamery, Inc., 265 B.R. 614, 616 (Bankr. M.D. Fla. 2001)). Venue of bankruptcy cases is proper "in the district court for the district—(1) in which the domicile, residence, principal place of business in the United States, or the principal assets in the United States" of the Debtor are located. 28 U.S.C. § 1408(1). The Debtor is a limited liability company incorporated in Nevada. Neither Irwin County nor any party (including the Debtor) has ever challenged the fact that venue is facially proper in the District of Nevada. The Court finds that the District of Nevada is a proper venue under § 1408.

## III.  MOTION TO TRANFER VENUE UNDER 28 U.S.C. § 1412

"A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412; see also Fed. R. Bankr. P. 1014(a)(1). Courts have emphasized that transfer is allowed if either statutory basis is established:

> Section 1412 authorizes the transfer of cases from one district to another either in the "interest of justice" or "for the convenience of the parties." These phrases each give authority independent of the other. In re Portjeff Dev. Corp., 118 B.R. 184, 193 (Bankr. E.D.N.Y. 1990). Under the Bankruptcy Act, both requirements had to be met. Id. The transfer had to be both in the interest of justice and for the convenience of the parties. Id. It is true that generally what serves the convenience of the parties will also serve the interest of justice, but the contrary is not necessarily true. Id.

In re Enron, 284 B.R. 376, 385–86 (Bankr. S.D.N.Y. 2002).

"'[T]he determination as to venue is fact-specific,'" B.L. of Miami, 294 B.R. at 328–29 (quoting Consol. Equity Prop., Inc. v. Southmark Corp. (In re Consol. Equity Prop., Inc.), 136 B.R. 261, 266 (D. Nev. 1991)), and "'is within the court's discretion based on an individualized case-by-case analysis of convenience and fairness.'" B.L. of Miami, 294 B.R. at 328–29 (quoting In re Enron, 284 B.R. at 386). "[An] elastic approach is necessary because venue does not easily submit to hard and fast rules." B.L. of Miami, 294 B.R. at 328–29 (quotation omitted).

## A.    Transfer of Venue for the "Convenience of the Parties"

In analyzing a Motion to Transfer for the "convenience of the parties," courts typically evaluate the following six factors:

1.    proximity of creditors of every kind to the court;
2.    proximity of the debtor;
3.    proximity of witnesses necessary to the administration of the estate;
4.    location of the assets;
5.    economic administration of the estate; and
6.    necessity for ancillary administration if liquation should result.

Consol. Equity Prop., 136 B.R. at 266 (citing Puerto Rico v. Commonwealth Oil Refining Co. (In re Commonwealth Oil Refining Co.), 596 F.2d 1239, 1247 (5th Cir. 1979), cert. denied, 444 U.S. 1045, 100 S. Ct. 732, 62 L. Ed. 2d 731 (1980) (hereinafter "CORCO")); see also B.L. of Miami, 294 B.R. at 329–34.  "Of these [factors], the fifth is the most important."  Consol. Equity, 136 B.R. at 266 (citation omitted); see also B.L. of Miami, 294 B.R. at 332.

### A.    Transfer of Venue in the "Interest of Justice"

A Motion to Transfer in the "interest of justice" is not linked to a specific set of factors like the "convenience of the parties" transfer.  Instead:

> When considering the "interest of justice," the court applies a broad and flexible standard.  Enron, 274 B.R. at 343, citing Manville, 896 F.2d at 1391.  The court considers whether transfer of venue will promote the efficient administration of the estate, judicial economy, timeliness, and fairness.  Enron, 274 B.R. at 343, citing Manville, 896 F.2d at 1391.

Enron, 284 B.R. at 387; see also B.L. of Miami, 294 B.R. at 334.

### B.    Burden of Proof Under Either Test

"The burden is on the movant to show by a preponderance of the evidence that the transfer of venue is warranted."  In re Enron, 274 B.R. 327, 342 (Bankr. S.D.N.Y. 2002).  In this case, the County, as the moving party, must show by a

preponderance of the evidence that another venue is more convenient to all the parties or that the transfer would be in the interest of justice.

In the more typical voluntary bankruptcy case, the initial choice of venue is selected by the Debtor.  Thus, bankruptcy courts have said:

> A debtor's choice of forum is entitled to deference, and "[w]here a transfer would merely shift the inconvenience from one party to the other, or where after balancing all the factors, the equities leaned but slightly in favor of the movant, the [debtor's] choice of forum should not be disturbed." 1 J. Moore, <u>Moore's Federal Practice</u> ¶ 0.145[5] at 1616 (2d ed. 1988) (citations omitted).

<u>In re Garden Manor Assocs., L.P.</u>, 99 B.R. 551, 555 (Bankr. S.D.N.Y. 1988); <u>see also</u> <u>Enron</u>, 274 B.R. at 342 (citing <u>In re Ocean Props. of Delaware, Inc.</u>, 95 B.R. 304, 305 (Bankr. D. Del. 1998)) ("A debtor's choice of forum is entitled to great weight if venue is proper."); <u>In re Uslar</u>, 131 B.R. 22, 23 (Bankr. E.D. Pa. 1991) ("[U]nless the balance is strongly in favor of transferring venue, the debtor's choice of forum should rarely be disturbed.").

Irwin County has suggested that "[i]n an involuntary case . . . the petitioning creditors' choice of forum is not entitled to the same deference." (ECF Doc. No. 149, p. 2.)  Irwin County points out that this venue was not chosen by the Debtor; it was chosen by a group of creditors.  Irwin County thus asks the Court to give no deference to the filing creditor's choice of Nevada as a forum.

The County has raised the issue of what showing is required.  There is some disagreement as to the level of showing required to justify the transfer of venue.

See Uslar, 131 B.R. at 23; but cf. In re Volkswagen of Am., Inc., 545 F.3d 304, 315 n.10 (5th Cir. 2008) (indicating that the requirement that "the balance [of the factors] is strongly in favor of transfer," which is applied in *forum non conveniens* cases, is not applicable in § 1404 cases weighing the convenience of the parties and the interest of justice).  The Court need not resolve the issue here.  Even giving weight and deference to the filing creditor's choice of forum, the relevant considerations in the transfer of venue analysis strongly outweigh any weight the creditor's choice of forum might receive.

### D.   **Authority to Transfer Venue to Forum Other Than Requested**

Throughout the hearings in this case, this Court has discussed with the parties the possibility of transferring the case to the Northern District of Georgia instead of the Middle District of Georgia.  While Debtor's original motion—and now the County's motion—technically only requested transfer to the Middle District of Georgia, the Court and parties have from an early point discussed the possibility of the Northern District of Georgia (Atlanta) as an alternative.  Because it has been discussed and argued during the Motion to Transfer proceedings, the Court finds it is appropriate to consider transfer to the Northern District of Georgia as an alternative.

Even if not technically raised, the Court has the power to consider the issue *sua sponte*.  In <u>B.L. of Miami</u>, the bankruptcy court found that it had the power to *sua sponte* transfer venue.  294 B.R. at 329–30.

> Neither Rule 1014(a)(1) nor § 1412 prohibit *sua sponte* transfer after notice and hearing. On the contrary, the great weight of authority supports it. Therefore, considering the relevant case law, the analogous relationship between § 1404(a) and § 1412, and the equitable powers granted this court under 11 U.S.C. § 105, it is proper for the court to raise the issue of transfer *sua sponte*.

<u>B.L. of Miami</u>, 294 B.R. at 330.  Similarly, other courts have recently found the power to transfer a case to a venue which was not initially requested, when the transfer is warranted but the venue requested is not optimal.  <u>See</u> <u>In re Patriot Coal Corp.</u>, Bankr. No. 12-12900, 2012 WL 5934334 (Bankr. S.D.N.Y. Nov. 27, 2012).

As the two Georgia districts border each other, the convenience of the parties and the interest of justice analyses are nearly identical.  Where one district in Georgia is more convenient than Nevada, the other district in Georgia will be equally, or nearly equally, convenient.  As such, the Court will first determine whether transfer from Nevada is warranted by simplifying the analysis to Georgia versus Nevada.  Then if transfer from Nevada is warranted, the Court will decide between the two potential Georgia districts.

## IV. ANALYSIS OF TRANSFER OF VENUE UNDER 28 U.S.C. § 1412.

### A.   The Convenience of the Parties

To determine the convenience of the parties, the Court must weigh the factors laid out above.  The most important factor is the economic administration of the estate.  B.L. of Miami, 294 B.R. at 332.  After evaluating each of the applicable factors, as set forth below, the convenience of the parties analysis supports transferring venue.

### 1.    The Proximity of Creditors of Every Kind to the Court

In B.L. of Miami, Judge Zive divided the first factor—proximity of Creditors of Every Kind—into subcategories of creditors which are listed and analyzed in the following paragraphs.  294 B.R. at 330.

### a.    The top 20 unsecured creditors

In B.L. of Miami, the court first looked at the 20 largest unsecured creditors. "This factor must be analyzed as to both the number of creditors and the amounts of their claims . . . . 'Both number and size are of equal significance in gaining acceptance of a plan and should be of equal significance in considering the convenience of the creditors.'" B.L. of Miami, 294 B.R. at 330 (citing CORCO, 596 F.2d at 1248).  In this case, none of the 20 largest unsecured creditors is located in Nevada.  However, seven of those 20 are located in Georgia.  Two are located in the Middle District of Georgia.  Five are located in the Northern District of Georgia.

The total amount of unsecured claims is $5,969,903.31.  The Georgia unsecured claims are scheduled as totaling $5,922,312.28.  Of this amount, a total claim of $5,919,062.63 is scheduled for Detention Management, LLC, a company in Atlanta, Georgia.  The only other unsecured claims which list a definite amount are also located in Atlanta.  A large percentage of the total value of the unsecured claims comes from Georgia claims.  None of the value comes from Nevada claims. Neither the number of creditors nor the size of the unsecured claims weighs in favor of Nevada.  As such, this factor strongly supports transfer to Georgia.

### b.    All unsecured non-priority claims

Because of the small number of scheduled creditors, this analysis is the same as the analysis above.  In this case, this factor is neutral.

### c.    Secured claims

There are only three secured claims listed on Schedule D.  The largest secured claim is the $54,195,000.00 claim of the Indenture Trustee on behalf of the bondholders.  The Indenture Trustee is located in Minneapolis, Minnesota. "Because this creditor is neither in Nevada nor [Georgia,] this claim is not a major factor in determining venue."  B.L. of Miami, 294 B.R. at 331.

Even if the Court considered the locations of each individual bondholder, this factor would still not weigh in favor of Nevada.  The bondholders are spread throughout the country.  There is not one bondholder located in Nevada.  However, there are some bondholders in Georgia.  The remaining two secured claims are for Irwin County, Georgia for $1,604,625.44 in back taxes, and the City of Ocilla, Georgia for some possible share of the Irwin County claim.  While the Irwin County claim is listed as disputed, it is liquidated because the County has obtained a judgment.  At a minimum, two of the three secured claim holders are in Georgia. None of the secured claim holders are in Nevada.  This factor again strongly supports transfer to Georgia.

### d.   Unsecured priority claims

There are no unsecured priority claims listed.  This factor is neutral.

### 2.   Proximity of the Debtor

While the Debtor is incorporated in Nevada, the Debtor's principal place of business is in Atlanta, Georgia.  The Debtor is solely owned by Terry O'Brien, who lives in Atlanta.  Debtor's office and records are in Atlanta.  Debtor has no operations or staff in Nevada.  The Debtor's primary asset is the prison located in Ocilla, Georgia—part of Irwin County.  Because the Debtor's principal place of business and principal assets are located in Georgia, this factor also strongly favors transfer.

### 3.   Proximity of Witnesses Necessary to the Administration of the Estate

To the extent non-expert witnesses are required in this case, it appears virtually all of them will come from Georgia.  While the parties have not yet identified who might be called, all persons connected to the Debtor and the operation of the prison are in Georgia.  The Indenture Trustee has also spelled out that a critical part of the bondholders arguments in this case will be for equitable subordination of the County's claim because of its conduct.  That will certainly require some witnesses from the County.  This factor also strongly supports transfer to Georgia.

### 4.    Location of the Assets

Debtor's primary asset is the prison that it leases to the County, which of course is located in Irwin County, Georgia.  In <u>B.L. of Miami</u>, the Court emphasized that having a case where the assets are located made particular sense in the context of a reorganization.  <u>B.L. of Miami</u>, 294 B.R. at 332.

> Just as a Florida judge may well prefer to send a Nevada casino bankruptcy to Nevada even if venue were proper in Florida, this court sees strong reason to send a Chapter 11 case involving solely a Florida nightclub to Florida.  This is because "[i]n bankruptcy, more than in most other kinds of federal proceedings, judges tend to draw on their experience to test the promises and platitudes floated up to the bench." <u>Id.</u>  It is the judge in that community that is in the better position to judge whether the particular enterprise "is a good candidate for reorganization . . . in the economic community in which it operates." <u>Id.</u>; <u>see also</u> <u>In re Consol. Equity Prop., Inc.</u>, 136 B.R. at 267 (stressing that court should consider "any local interests" when determining venue).  Where a debtor's assets consist solely of real property, as with Debtor in this case, courts "have held that transfer of venue is proper because '[m]atters concerning real property have always been of local concern and traditionally are decided at the situs of the property.'"  <u>In re Enron</u>, 284 B.R. at 392 [internal citations omitted].

<u>B.L. of Miami</u>, 294 B.R. at 332.  Similarly, this Court sees a strong reason to send this case involving solely a Georgia prison to Georgia.  "Because Debtor's sole major asset is in [Georgia,] venue is more proper there."  <u>Id.</u>

### 5.    Economic Administration of the Estate

"This factor is the most important consideration . . . ." <u>B.L. of Miami</u>, 294 B.R. at 332.  Debtor has no operations or personnel in Nevada.  Holding

proceedings in Nevada would require travel by all the parties in interest throughout the length of the case. The Debtor and a number of significant creditors are located in Georgia. It is more economical, and certainly more convenient, for these parties if the case is administered in Georgia. The Georgia parties would not be required to pay for local counsel in Nevada or significant travel expenses for their representation and counsel. These considerations seem particularly relevant given the County's assertion of its lack of wealth and stretched budget.

The Indenture Trustee has argued that the Middle District of Georgia is harder to reach for him and the individual bondholders than the District of Nevada. He asserts it is less economical for travel to Court proceedings. Travel to the Middle District of Georgia from places around the United States requires a flight to Atlanta, then a long drive from Atlanta. The Indenture Trustee has repeatedly stressed that the District of Nevada is far superior because of the convenience of flying in and out of Las Vegas, and the court location being right here in Las Vegas.

Neither the Indenture Trustee, nor the Court, has found any case considering ease of air travel or access to be a relevant consideration in the transfer analysis. Even if it is a consideration, this Court is not convinced the difference in travel convenience for all parties is all that great. To the extent travel to and from the Middle District of Georgia is in fact less convenient than Las Vegas and the

District of Nevada for the Indenture Trustee and individual bondholders the same cannot be said of Atlanta and the Northern District of Georgia.

The Indenture Trustee has also argued that it may be difficult for all parties to find local counsel in the Middle District of Georgia, given the smaller size of the local bar. There is no evidence to support this assertion. Even if it were supported, the same cannot be said of the Northern District of Georgia. Certainly, the parties should have no trouble finding counsel in Atlanta.

Unlike <u>B.L. of Miami</u>, in this case, there is no major pending state court litigation. However, even the Indenture Trustee has admitted "there are some state law issues," (ECF Doc. No. 150, p. 7.), and there will be a need to apply Georgia law. In particular, this case may require the interpretation of Georgia property law and tax law. Having the case in a Georgia court may be more efficient for that reason alone.

The Court also considers a couple more things bearing on the administration of this particular case. Debtor's Schedule G also shows that none of the Debtor's executory contracts and unexpired leases are with parties located in Nevada. Half of them, however, are with parties located in Georgia. The Indenture Trustee also has moved for the appointment of a case trustee. Should a trustee be needed to oversee Debtor's operations, now or in the future, Georgia will also be a more

practical and economical location for the trustee.  All of these considerations show that economy of administration will be best served in Georgia—not Nevada.

### 6.    Necessity for Ancillary Administration if Liquidation Should Result

Because of the early stage of this case, this factor will be given little weight. As the court in B.L. of Miami stated: "This factor will be given little weight because anticipating the failure of this Chapter 11 case is not a logical basis in weighing venue." 294 B.R. at 333 (citing CORCO, 596 F.2d at 1248).  Even so, it would seem that if the case were to turn into a liquidation, either of the Georgia districts would be preferable to Nevada.  A liquidation would be of the Debtor's assets and the biggest asset by far is the prison and real property in Georgia.  Any valuation proceedings related to a sale of the property would be better handled in a Georgia Court—more familiar with values and local considerations.

Based on the above analysis, the Court finds that Nevada is not the most convenient district for this case.  Every single factor that weighs in any direction favors transferring venue of this case to Georgia.  Either district of Georgia is more convenient than, and thus more preferable to, Nevada.  While venue is technically proper in Nevada, the Court concludes it is not the most convenient venue for any of the parties.  The Court will transfer the case to Georgia, which is most convenient to the greatest number of parties.  The only remaining question is which district in Georgia.

The analysis of the above factors shows the balance is split between them. While significant unsecured creditors are located in the Northern District, significant secured creditors are located in the Middle District. The proximity to the Debtor favors the Northern District whereas the location of the assets favors the Middle District. Specific witnesses have yet to be identified, but they would likely come from both districts. Because these districts border each other, the physical distance for the parties to travel will not be large—and thus does not tip the balance any particular way.

As noted, the most important factor is the economic administration of the estate. B.L. of Miami, 294 B.R. at 332. This factor arguably favors the Northern District of Georgia. The Indenture Trustee's main argument throughout the proceedings has been that the Middle District is more inconvenient because it lacks the easy air access of Las Vegas. That concern is alleviated—if not entirely wiped away—if the case is transferred to Atlanta. Atlanta has a major airport with air service equal to or better than Las Vegas for most of the United States. Similarly, the parties can have no serious concerns about the ability to find counsel in Atlanta. The Court concludes the economic administration of the case narrowly favors the Northern District of Georgia. The Court holds that the case should be transferred to that district.

### B.    <u>The Interest of Justice</u>

As noted, 28 U.S.C. § 1412 allows for transfer if it serves either the convenience of the parties <u>or</u> the interest of justice.  The Court's finding that the convenience of the parties favors transfer is dispositive.  Nevertheless, the Court will also address the interest of justice.  For a transfer of venue to be in the interest of justice, the transfer must "'promote the efficient administration of the estate, judicial economy, timeliness and fairness.'"  <u>B.L. of Miami</u>, 294 B.R. at 334 (citing <u>Enron</u>, 284 B.R. at 346).

The same considerations that drove the convenience of the parties analysis are also at issue in the interest of justice analysis.  This case is really a Georgia case.  Almost everything having to do with this case happened or is located in Georgia.  The <u>only</u> connection to Nevada is Debtor's incorporation.  Debtor has no operation, no staff, or presence of any kind in Nevada.  There are also no creditors in Nevada.  While venue is technically proper in Nevada based on Debtor's incorporation, it does not make it fair to all the numerous Georgia parties in interest to have the case in such a distant district.  The Court finds that the interest of justice is best served by transferring this case to Georgia.

While the convenience of the parties presented a slightly closer question on which Georgia district should receive the case, the interest of justice analysis more definitely favors the Northern District of Georgia.  The Northern District of

Georgia addresses all the major concerns of all parties.  The County, the moving party, stated it has no objection to the Northern District of Georgia.  Similarly, Detention Management, LLC, the largest unsecured creditor, has no objection.  While the Debtor took no position on transfer, it had previously agreed to the Northern District of Georgia as a good alternative.  The Northern District of Georgia also seems to satisfy the overriding concerns of the Indenture Trustee regarding air travel and representation.  For all these reasons, transferring venue to the Northern District of Georgia is in the interest of justice.

**IT IS HEREBY ORDERED** that Debtor's Chapter 11 case shall be transferred to the U.S. Bankruptcy Court for the Northern District of Georgia.

Dated and Entered:  December 28, 2012